IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DELIA MORRIS.<br>801 North Monroe Street, Apt 700<br>Arlington, VA 22201<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN PETROLEUM<br>INSTITUTE,<br>200 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br><br>    Defendant. | Civil Action No. 1:25-cv-1219 |

**COMPLAINT**

Plaintiff Delia Morris ("Plaintiff" or "Ms. Morris"), by and through her undersigned counsel, hereby files this Complaint against Defendant American Petroleum Institute ("Defendant" or "API") and alleges as follows:

Plaintiff brings this action for violations of the following federal statutes:

1. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. - prohibiting sexual harassment, hostile work environment, gender discrimination, and retaliation against employees who engage in protected activity.

2. The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. - prohibiting interference with an employee's right to take protected medical leave and retaliation against employees for exercising their FMLA rights.

3. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. - prohibiting discrimination and retaliation based on disability and requiring reasonable accommodation.

As detailed below, Defendant engaged in unlawful conduct by subjecting Plaintiff to severe and pervasive harassment, disparate treatment, and retaliatory actions that culminated in her wrongful termination.

## **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant maintains its principal place of business in the District of Columbia and the events giving rise to this action occurred within this judicial district.

3. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 9, 2024.

4. The EEOC issued Plaintiff a Notice of Right to Sue on February 19, 2025. This Complaint is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue, and all other prerequisites to the filing of this suit have been met.

## PARTIES

5. Plaintiff Delia Morris is a female resident of Arlington, Virginia who was employed by Defendant as a Senior Economic Policy Advisor from December 5, 2022 until August 22, 2023.

6. Defendant American Petroleum Institute is a non-profit corporation with its principal place of business at 200 Massachusetts Avenue NW, Washington, DC 20001.

## FACTUAL ALLEGATIONS

7. Ms. Morris began her employment with API on December 5, 2022, as Senior Economic Policy Advisor, bringing over 20 years of energy market and industry experience.

8. Ms. Morris excelled in her role and was recognized for her contributions, particularly in preparing CEO talking points and industry meeting briefings.

9. Ms. Morris's direct supervisor, Dean Foreman, maintained a pattern of discriminatory conduct towards women, openly criticizing women in high-ranking positions in the oil and gas industry.

10. On Monday February 27, 2023, Mr. Foreman sent Ms. Morris and another female colleague a chapter from a book he was writing, which contained explicit sexual content, including lewd terminology such as "thrust," "orgy,"

and "striptease." The content ridiculed young girls, creating an uncomfortable and hostile work environment.

11. In addition to his gender-based bias, Mr. Foreman assigned Ms. Morris reading material authored by an individual accused of white supremacist views, further contributing to a racially and sexually hostile workplace.

12. On March 2, 2023, Ms. Morris reported Mr. Foreman's behavior to Frank Macchiarola, Head of Policy, Economics, and Regulatory Affairs. Mr. Macchiarola acknowledged the seriousness of the allegations and referred the matter to Human Resources.

13. API terminated Mr. Foreman within days of the complaint but allowed him to retain privileged access to the company's Bloomberg equipment while denying Ms. Morris the same access, thereby retaliating against her.

14. API assisted Mr. Foreman in finding his next job with Texas Oil and Gas Association, in Austin Texas, and maintained Mr. Foreman's material on API's website. Ms. Morris was never offered these privileges when she was terminated.

15. Following Mr. Foreman's termination, Ms. Morris faced continued hostility and was subjected to retaliatory behavior, including threats to her job security by HR Vice President Eileen Adenan.

16. Ms. Morris was denied critical work resources, including equipment and a keyboard and Bloomberg terminal access, which Mr. Foreman was allowed to keep in his home in Bethesda Maryland even after being terminated, despite it being essential for her role.

17. Her new supervisor, Stephen Comstock, continued discriminatory practices, including assigning Ms. Morris tasks below her level of expertise while favoring less experienced colleagues.

18. Mr. Comstock repeatedly micromanaged and aggressively questioned Ms. Morris while dismissing her contributions, contributing to a toxic work environment.

19. Mr. Comstock also physically intimidated Ms. Morris by banging on her office door in an aggressive manner.

20. API denied Ms. Morris the standard $5,000 educational benefit, while granting it to similarly situated employees.

21. API blocked Ms. Morris from transferring to another department, further limiting her career advancement opportunities.

22. Ms. Morris faced ongoing cyberbullying, including suspicious emails purportedly from API's CEO, creating further stress and anxiety.

23. In June 2023, Ms. Morris faced a family medical emergency requiring daily IV antibiotic treatments for her father through July 7, 2023. The crisis required multiple physician appointments, emergency ambulance services, and extensive care coordination.

24. Plaintiff engaged in protected activity by requesting FMLA leave when her father experienced a documented medical crisis requiring a 3.5-week hospital stay, two surgeries, daily IV antibiotic treatments, and emergency ambulance services in June-July 2023.

25. Plaintiff specifically discussed FMLA leave options with her supervisor Stephen Comstock; while noting she had not yet met the 12-month employment requirement. Mr. Comstock offered to explore accommodation options with HR but never followed through.

26. Defendant retaliated against Plaintiff by requiring her to exhaust all available sick leave and PTO, leaving her with only four (4) days until 2024, while providing no alternative accommodations despite the documented emergency nature of the situation.

27. Upon Plaintiff's return to work, Mr. Comstock further retaliated by instructing her not to share details about her father's medical condition with colleagues in the future, despite the emergency nature of the situation that had required immediate coordination of medical care.

28. Ms. Morris developed severe medical conditions due to the hostile work environment, including chronic headaches, cervical spondylosis with neck and right arm pain, and stress-induced physical symptoms. These conditions required ongoing medical treatment and were documented by healthcare providers.

29. On August 17, 2023, Ms. Morris applied for short-term disability leave due to her medical conditions. She attended an MRI appointment for a pinched nerve on the same day.

30. API denied her short-term disability leave the next day without proper review or justification.

31. At HR's specific request, Ms. Morris submitted detailed 30-page documentation of the hostile work environment to HR Director Chana Borgh and Dustin Meyer on August 18-19, 2023.

32. Less than 48 hours after submitting this documentation, API terminated Ms. Morris on August 22, 2023. The termination occurred without any prior formal warnings or performance improvement plans.

33. API's pattern of discriminatory behavior is evidenced by similar conduct in other cases, including Khan v. American Petroleum Institute, where another employee was terminated shortly after reporting discriminatory conduct.

34. Following Ms. Morris's termination, API engaged in continued retaliatory conduct including:

    a. Interference with unemployment compensation claims

    b. Denial of retirement benefits despite her contributions to the retirement plan

    c. Continued harassment through intrusive communications

    d. Attempts to damage her professional reputation within the industry

35. API denied Ms. Morris's Family and Medical Leave Act request and required her to deplete all remaining sick leave and paid time off, leaving her with only four PTO days for the remainder of the year.

36. Ms. Morris developed severe medical conditions due to the hostile work environment, including chronic headaches, cervical spondylosis with neck and right arm pain, and stress-induced physical symptoms.

37. On August 17, 2023, Ms. Morris applied for short-term disability leave due to her medical conditions.

38. API denied her short-term disability leave the next day without justification.

39. At HR's request, Ms. Morris submitted a detailed 30-page documentation of the hostile work environment on August 18-19, 2023.

40. Less than 48 hours after submitting this documentation, API terminated Ms. Morris on August 22, 2023.

41. API's pattern of discriminatory behavior is evidenced by similar conduct in other cases, including Khan v. American Petroleum Institute.

## CAUSES OF ACTION

I. **COUNT I**
*Sexual Harassment/Hostile Work Environment*
*(Violation of Title VII)*

42. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

43. Defendant subjected Plaintiff to severe and pervasive harassment based on her sex that created a hostile work environment.

44. Mr. Foreman engaged in discriminatory conduct by criticizing women in leadership positions and requiring Plaintiff to review sexually explicit content that ridiculed young girls.

45. Mr. Comstock continued the pattern of harassment through physical intimidation, hostile behavior, and public humiliation.

46. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, causing documented medical conditions and requiring ongoing treatment.

47. Defendant knew or should have known of the harassment and failed to take appropriate remedial action.

## II.   COUNT II
*Gender Discrimination*
*(Violation of Title VII)*

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Defendant discriminated against Plaintiff because of her sex by denying her access to essential work resources provided to male employees.

50. Defendant denied Plaintiff educational benefits and transfer opportunities while providing these opportunities to similarly situated male employees.

51. Defendant subjected Plaintiff to heightened scrutiny and criticism not applied to male colleagues.

52. Defendant's discriminatory actions caused Plaintiff significant professional, financial, and emotional harm.

## III.   COUNT III
*Retaliation*
*(Violation of Title VII)*

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Plaintiff engaged in protected activity by reporting discriminatory conduct and documenting the hostile work environment. Specifically, Ms. Morris was requested by Human Resources and Mr. Comstock to provide API with a log of the issues Ms. Morris was facing. She complied, thereby engaging in protected activity, but was terminated almost immediately after providing the log.

55. Defendant retaliated through threats to Plaintiff's job security, systematic exclusion from professional opportunities, and denial of workplace benefits.

56. Defendant's retaliatory termination occurred within 48 hours of Plaintiff submitting documentation of harassment.

57. The temporal proximity and pattern of antagonistic behavior demonstrate a causal connection between protected activity and adverse actions.

IV. **COUNT IV**
*FMLA Retaliation*
*(29 U.S.C. § 2615(a)(2))*

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Plaintiff engaged in protected activity by requesting FMLA leave for her father's documented medical emergency requiring daily IV antibiotic treatments and extensive medical care.

60. Although Plaintiff had not met the 12-month employment requirement, her request constitutes protected activity under the FMLA.

61. After Plaintiff's FMLA request, Defendant engaged in retaliatory actions including:

    a. Requiring Plaintiff to exhaust all available sick leave and PTO

    b. Providing no alternative accommodations for her father's medical emergency

    c. Instructing Plaintiff not to share details about her father's medical condition with colleagues

    d. Failing to engage in an interactive process regarding leave options.

62. Defendant's retaliatory actions culminated in Plaintiff's termination shortly after she applied for short-term disability benefits.

63. The temporal proximity between Plaintiff's protected activity and her termination, combined with the pattern of antagonistic behavior, demonstrates a causal connection between her FMLA request and the adverse employment actions.

64. Defendant's actions constitute unlawful retaliation in violation of the FMLA, 29 U.S.C. § 2615(a)(2).

V. **COUNT V**
   *Disability Discrimination and Retaliation*
   *(Violation of the ADA)*

65. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Plaintiff suffered from qualifying disabilities including work-related stress causing physical symptoms, cervical spondylosis, and chronic headaches requiring medical treatment.

67. Plaintiff requested reasonable accommodation through short-term disability leave.

68. Defendant discriminated by denying accommodation without proper review and questioning the legitimacy of Plaintiff's disability.

69. Defendant retaliated by terminating Plaintiff within five days of her accommodation request.

70. Medical documentation confirms Plaintiff's conditions were legitimate and improved after removal from the hostile work environment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Award Plaintiff back pay and front pay.

B. Award Plaintiff compensatory damages for emotional distress, physical injury, and reputational harm.

C. Award Plaintiff punitive damages to deter Defendant from engaging in future unlawful conduct.

D. Award Plaintiff liquidated damages under the FMLA.

E. Order restoration of Plaintiff's employment benefits.

F. Award damages for documented medical treatment and ongoing health impacts.

G. Award Plaintiff reasonable attorneys' fees and costs.

H. Award Plaintiff pre- and post-judgment interest.

I. Order injunctive relief requiring policy changes to prevent future discrimination.

J. Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: 4/21/25                                                  Respectfully Submitted,

/s/ Donald Quinn
Donald G. Quinn, Fed. Bar No. 1738652
838 Ritchie Highway, Suite 4
Severna Park, Maryland 21146
Phone: (443)247-5444
Phone: (202)508-3644
Fax: (202)478-1632
donquinn@quinnpatton.com
*Attorney for the Plaintiff*

**CERTIFICATE OF SERVICE**

      I HEREBY certify, on this 21st Day of April 2025, the foregoing was served by personal service through a professional process server and mailed by U.S. Post Certified Mail, postage paid.

American Petroleum Institute
200 Massachusetts Avenue, NW
Washington, D.C. 20001
*Defendant*

                                      /s/ Donald Quinn
                                      Donald G. Quinn