**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

|  |  |
|---|---|
| DELIA MORRIS, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 1:25-cv-1219-EGS |
|  | ) |
| AMERICAN PETROLEUM INSTITUTE, | ) |
|  | ) |
| Defendant. | ) |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Wrong on the facts and the law, Plaintiff's Opposition ("Opp.") effectively confirms that each of her claims should be dismissed. Given that a motion to dismiss must be decided on the facts alleged in the Complaint, it should be hard for a plaintiff to be "wrong" on the facts; but here, Plaintiff has accomplished that difficult feat by repeatedly claiming that the Complaint contains facts <u>not</u> alleged, either by exaggerating her actual allegations or by adding allegations that simply do not exist. It is notable, in fact, that Plaintiff's twenty-five page opposition fails to cite to <u>even one</u> paragraph in the Complaint. Plaintiff is wrong, too, on the law. For example, she repeatedly cites to a long-overruled legal standard, thereby effectively conceding that her Complaint cannot survive under the correct pleading standard. Plaintiff has pointed to no cases demonstrating that the facts alleged in her Complaint are similar to those that have survived motions to dismiss, nor has she made any effort to distinguish her case from the many cases cited by Defendant in its motion and memorandum. For all these reasons, as more further set out below, Defendant's Motion to Dismiss should be granted.

## ARGUMENT

At first blush, Plaintiff and Defendant appear to agree that Defendant's Motion is subject to review under the familiar plausibility standard enunciated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  But Plaintiff ignores that binding authority just as soon as she cites it, arguing instead that "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims."  Opp. at 3, citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  As the Court acknowledged in *Iqbal*, "*Twombly* retired the *Conley* no-set-of-facts test."  556 U.S. at 670.  In *Twombly*, the Court said of the test, "the famous observation has earned its retirement," and "the phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."  550 at 563.  This is no isolated error; Plaintiff cites *Conley* and some version of the "no set of facts" standard at least four times.  *See* Opp. at 3, 7, 10, 24.  Applying the proper standard to the facts alleged in the Complaint – not to the mischaracterizations and supplemental assertions included in the Opposition – it is clear that dismissal of each claim is appropriate.[1]

## I.    COUNT I:  HOSTILE WORK ENVIRONMENT (TITLE VII)

Because the actual allegations set forth in the Complaint, quoted at length in Defendant's Opening Memorandum ("Motion") at 6, fail to meet the high bar necessary to state a hostile work environment claim, Plaintiff's Opposition resorts instead to exaggerating the existing allegations and adding others that are not present.  These assertions, unsupported by the Complaint itself, should be ignored because a complaint cannot be amended by arguments contained in an opposition brief.  *See*, *e.g.*, *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 25-26

---

[1]  Ironically, Plaintiff claims that Defendant "misstates the standard at this stage," but does not identify any such misstatement.  Opp. at 8.

(D.D.C. 2015); *Jones v. Ass'n of Am. Med. Colls.,* Case No. 22-1680 (EGS), 2023 U.S. Dist. LEXIS 35127, at *21-23 (D.D.C. Mar. 2, 2023).

For example, where the Complaint alleged that Plaintiff's original supervisor, Foreman, had "openly criticiz[ed] women in high-ranking positions in the oil and gas industry," Compl. ¶9, the Opposition says that Foreman "routinely disaparag[ed]" women in leadership.  Opp. at 8. "Openly criticizing" leaders – of any gender – is plainly not the same as "disparaging" those same people; obviously, one can critique or challenge one's way of doing business without disparaging their character, motives, or gender.  Moreover, Plaintiff's allegation does not include any assertion of the frequency of this criticism; only in the Opposition has the allegation morphed into "routine" commentary.  The Opposition later mischaracterizes this same "openly criticized" allegation as one alleging the presence of "repeated and degrading gender-based remarks" and "repeated[]  . . . gender-based disparagement."  Opp. at 10, 11.  But the Complaint does not allege that the "criticism" was in any way degrading or gender-based.

Similarly, where the Complaint alleges that Foreman asked her to read a chapter of a book he was writing that included passages that "ridiculed young girls," Compl. ¶ 10, the Opposition dresses up these allegations, claiming the book "involved sexualization of females, including teenagers."  Opp. at 11.  Yet, nothing in the Complaint supports this assertion, as the Complaint does not allege sexualization of anyone, and does not even mention "teenagers." Plaintiff's Complaint alleges more generally that Foreman's book gave rise to a hostile environment because it included "lewd terminology such as 'thrust,' 'orgy,' and 'striptease." Compl. ¶10.  The Opposition openly exaggerates these allegations, claiming that the book chapter was "replete with . . . humiliating references," included "degrading language" that "objectified women."  Opp. at 8.  But the Complaint does not allege that the book chapter

humiliated, degraded, or objectified women, nor does it allege that the book was "replete with"

any particular language. Indeed, the Complaint does not even provide the context in which the

cited terms make an appearance in a book about "how pervasive the oil and gas industry is in the

daily lives of ordinary people." Motion Ex. 1, Addendum to EEOC Form ¶6. Plaintiff asks this

Court to <u>assume</u> the words conveyed something sexual or demeaning, but that would not be a

reasonable inference based on the facts alleged.[2]

Moreover, <u>even if</u> the book chapter forwarded by Foreman was, and was intended to be,

lascivious, the conduct as described still would not rise to the level necessary for the claim to

proceed. As noted in Defendant's Motion, comments of this nature must be <u>particularly</u> <u>severe</u>

to give rise to a viable Title VII claim, even when the comments are sexual in nature or

otherwise directly related to an employee's protected characteristics. *See* Def. Motion at 7-8

(citing cases). Plaintiff's allegations, even if true, are simply not sufficient, and the fact that

Plaintiff feels it necessary to exaggerate the claims made in her Complaint demonstrates that she

understands her actual allegations fail to state a claim for hostile work environment.

---

[2] The individual words plucked by Plaintiff from the book chapter are not, in isolation, offensive or harassing, particularly with no context. For example, an internet search reveals the use of the term "orgy" to refer to a period of oil speculation dating as far back as 1919, or more recently, as a period of vigorous extraction. *See* "Orgy of Oil Speculation," New York Times, June 1, 1919, https://www.nytimes.com/1919/06/01/archives/orgy-of-oil-speculation-standard-no-longer-dominates-field-and-5000.html; *see also "America First, Planet be Damned: Trump Calls for Orgy of Extraction at North Dakota Energy Speech,* In These Times, May 31, 2015, https://inthesetimes.com/article/trump-calls-for-more-everything-in-north-dakota-energy-speech. The word "thrust" is not inherently sexual; it has mechanical and geologic meanings significant to the oil and gas industry such that one oil and gas company has taken Thrust Energy as its name. *See* https://thrustenergy.com/. The term "stripper" is used to refer to oil wells that are nearing the end of their useful life, and thus the word "striptease" is more likely a reference to oil and gas wells than it is to an erotic dance. https://en.wikipedia.org/wiki/Stripper_well. There is even a National Stripper Well Association. https://en.wikipedia.org/wiki/Stripper_well.

Plaintiff has also failed to counter Defendant's legal arguments, addressing only one cited case. Plaintiff attempts to distinguish the case of *Cunningham v. Ramjay, Inc.*, 2023 U.S. Dist. LEXIS 226359, *14 (D.D.C. Dec, 20, 2023) by suggesting that the court's reference to "verbal comments" would exclude Foreman's comments, since they were "in writing." Opp. at 11. But just like most oral comments, written comments <u>are</u> "verbal" comments (in that they use words as opposed to pictures or signs). Foreman's book chapter, which allegedly used the words "thrust," "orgy" and "striptease," at least once in some undisclosed context, is certainly not more "charged" or "severe" than the comments allegedly made by the harasser in *Cunningam,* who told the plaintiff to "'get her titty' off him," that he "had a dirty mind," and that she was his "'type,' 'thick' and 'cute'," which the *Cunningham* court found insufficient to state a hostile work environment claim. Not only has Plaintiff ignored the multitude of cases cited by Defendant finding more egregious conduct not to state an actionable harassment claim, she has failed to identify <u>any</u> case involving conduct similar to that alleged in her Complaint where the court permitted a harassment claim to move forward.

For all these reasons, Plaintiff's Count I should be dismissed.

## II.    <u>COUNT II:  GENDER DISCRIMINATION (TITLE VII)</u>

In its Motion, Defendant argues that Plaintiff's Count II fails to state a claim because: (i) she has not alleged any materially adverse action sufficient to state a claim; and (ii) she has not alleged facts from which this Court could infer that any alleged decision was made because of her gender. Plaintiff's Opposition fails to address either of those arguments. Instead, Plaintiff again makes up allegations that do not exist in her Complaint.

For example, the Opposition claims that Plaintiff was "exclu[ded] from essential work assignments and meetings," Opp. at 8, 13, though no such allegation is found anywhere in the

Complaint.  She claims to have been denied "access to Bloomberg terminals and other professional tools routinely provided to male colleagues," *id.*, but the only equipment identified in her Complaint is the "Bloomberg terminal" (and presumably associated keyboard).  Compl. ¶ 13, 16.  With respect to this allegation specifically, the Opposition claims Plaintiff was "forced to navigate unnecessary bureaucratic hurdles for standard resources (and was questioned by her supervisor Comstock as to why she even would need the Bloomberg keyboard, like all the other men in [the] office who had it)."  Opp. at 14.  Yet, none of these allegations appears in the Complaint.  The Complaint also fails to allege that Comstock had anything to do with Plaintiff being denied access to the Bloomberg terminal; rather, according to the Complaint, the device was retained by Foreman, Compl. ¶¶13, 16, and, because she alleges Foreman is her comparator, Plaintiff's allegations do not create a reasonable inference of gender discrimination because Plaintiff and her former supervisor cannot possibly be considered Title VII comparators.  *See* Def. Motion at 12-13.  Similarly, with respect to the alleged denial of an educational benefit, Plaintiff concedes that the benefit was provided to her female colleague, thereby undercutting any possibility that the alleged denial was gender-based.

Plaintiff also points to no allegations in the Complaint showing that any of these workplace grievances had a tangible effect on the terms or conditions of her employment, and thus she has not alleged the harm necessary to make out an actionable discrimination claim.  As discussed above, the Opposition's characterizations of Plaintiff's Complaint, including the assertion that "these denials materially impaired her ability to perform job functions" are not found in the Complaint, are not entitled to any presumption of truth, and should not be considered when evaluating Defendant's Motion to Dismiss.  Because she has not alleged any

adverse action causing harm taken against her because of her gender, Plaintiff's Count II fails to state a claim and should be dismissed.

**III.     COUNT III:  RETALIATION (TITLE VII)**

In response to Defendant's argument that Plaintiff's Complaint makes no more than a conclusory assertion that she engaged in protected activity, Plaintiff compounds the error by attempting to supplement the Complaint with a series of unalleged facts.  Opp. at 16 (claiming that her log documented "persistent gender-based harassment and discriminatory treatment" and "specifically outlined conduct prohibited by Title VII"); *id*. at 17 (describing an email and an "instruct[ion] from HR" not mentioned in the Complaint); *id*. at 18 (describing a conversation with HR Vice President Adenan not mentioned in the Complaint).   Because those allegations are not included in the Complaint, they are properly ignored.  *BEG Invs., LLC*, 85 F. Supp. 3d at 25-26; *Jones,* 2023 U.S. Dist. LEXIS 35127 at *21-23.  Plaintiff makes no effort to address the cases identified in Defendant's motion, and cites to no case suggesting that her single conclusory assertion about a providing a "log of the issues" is sufficient to allege protected activity. Accordingly, she has failed to state a plausible claim of retaliation and Count III should be dismissed.

**IV.     COUNT IV:  RETALIATION (FMLA)**

As argued in Defendant's Motion, Count IV is insufficient because it arises from Plaintiff's allegation that she requested a period of FMLA leave that was to occur before she became eligible for FMLA protection, and for this reason she cannot show that she engaged in "protected activity," the necessary prerequisite to her claim.  *See* Motion at 16-17 (citing cases). In response, Plaintiff's Opposition contends that Plaintiff engaged in protected activity by "initiating a good faith inquiry regarding her future eligibility for FMLA leave in connection

with her father's serious medical condition." Opp. at 19 (emphasis added). Plaintiff's new and intentionally vague description of her alleged request cannot cure the core legal deficiency of the actual allegation in the Complaint. In the Complaint, Plaintiff specifically and expressly pleads that her alleged "protected activity" was her request to take leave to care for her father during a medical crisis that occurred in "June-July 2023," when she was still more than five months from being FMLA-eligible. Compl. ¶ 24. Plaintiff has not alleged that she inquired at any point about seeking leave that would begin after she became eligible for FMLA leave, which would not occur until December 5, 2023.

Plaintiff cites no case supporting her claim that her alleged conduct amounts to "protected activity" under the FMLA, and she ignores the substantial authority cited by Defendant demonstrating that it does not. Motion at 16-17. Despite claiming that "[c]ourts have consistently recognized that such conduct is protected under the Act, even where the employee is not yet eligible to take leave," Opp. at 19, Plaintiff has failed to cite to even one case supporting such an assertion. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3rd Cir. 2009), which Plaintiff cites on page 19 of her Opposition, does not support her argument. Plaintiff cites *Erdman* for the proposition that "an employee may assert a valid claim even if they are not yet eligible for FMLA leave, so long as they are retaliated against for engaging in protected inquiries or preparations to exercise those rights." Opp. at 5, 7. Plaintiff misrepresents the court's decision and reasoning in *Erdman*. In *Erdman*, the plaintiff had been employed for many years, but there was a dispute as to whether plaintiff had worked the requisite number of hours to qualify for FMLA leave. On summary judgment, the court examined the record evidence and concluded that Erdman had worked sufficient hours to qualify for FMLA protection. 582 F.3d at 506. The court did not address what would happen in a retaliation claim where an employee was

not eligible for FMLA leave; indeed it <u>declined</u> to address the argument, finding it had been

waived. *Id.* at 507 n.2.[3]  Plaintiff's next citation, to *Wysong v. Dow Chem. Co.*, 503 F.3d 441,

447 (6th Cir. 2007), also provides no support for her argument because there was no question in

that case of whether the plaintiff was eligible for FMLA leave at the relevant time.  Because

Plaintiff has not alleged that she engaged in any protected activity under the FMLA, she has

failed to state any plausible retaliation claim and Count IV should be dismissed.[4]

## V.      <u>COUNT V:  DISCRIMINATION/RETALIATION (ADA)</u>

Defendant moves to dismiss Plaintiff's ADA claim because she failed to exhaust her

administrative remedies by not including the claim in her EEOC charge.  Motion at 19, Ex. 1.

Defendant did not, as Plaintiff claims, argue that she "has not adequately pled the required

elements of her claims."  Opp. at 20.  Thus, much of Plaintiff's response is inapposite.  *See* Opp.

at 21-23.[5]

---

[3]  Plaintiff's citations to *Northcross v. Bd. Of Ed. Of Memphis City Sch.,* 412 U.S. 427, 428 (1973), Opp. at 5, 7, is also of misplaced.  It does not mention the FMLA (a statute passed some twenty years later) <u>or</u> the NLRA as Plaintiff's citation suggests.  It deals with an attorney's fees issues, and is therefore inapposite.

[4]  It is also worth noting that Plaintiff's Opposition makes an assertion directly at odds with her allegations contained in the Complaint.  She argues that it was retaliatory for API to "require her to exhaust all accrued sick leave and paid time off, leaving her without available leave protections for the remainder of the calendar year."  Opp. at 19.  But her Complaint alleges that she still had four days of leave available to her for the remainder of 2023.  Compl. ¶35.  Just as Plaintiff cannot use her Opposition to add allegations to her Complaint, she also cannot contradict her already pled facts in an effort to duck the impact of Defendant's Motion.  Moreover, assuming she wanted to be paid while she was out of work, it is not an adverse action to "require" (or permit) Plaintiff to use the paid leave available to her.

[5]  Plaintiff's pin cite to *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 41 (D.D.C. 2008), Opp. at 23, is incorrect as the discussion on that page addresses whether individuals can be held liable under the ADA and says nothing about whether the elements of retaliation were adequately pled).  Similarly, Plaintiff's pin cite to *Pantazes v. Jackson,* 366 F. Supp. 2d 57, 71 (D.D.C. 2005) takes one to a discussion of a hostile work environment claim arising under the Rehabilitation Act, and has nothing to do with the interactive process as claimed.  Opp. at 22.

Plaintiff's single paragraph addressing the exhaustion argument, Opp. at 21, again mischaracterizes the facts, improperly cites the law, and ignores the legal authority cited by Defendant. First, as to the facts alleged, Plaintiff claims that the EEOC charge "explicitly identified medical conditions resulting from workplace stress – including chronic headaches, cervical spondylosis, and anxiety including stress that aggravated muscular-skeletal conditions . . ." Opp. at 21. Yet not one of those conditions is mentioned in the EEOC Charge. Instead, the Charge refers to Plaintiff "developing a headache and muscle tension that would not quit." *See* Ex. 1 ¶ 14. The Charge also states that when she was asked why she had applied for short-term disability, Plaintiff responded that she "had a constant headache and needed the day off." *Id.* at ¶ 15. There is absolutely <u>nothing</u> in the Charge that would lead an investigator to believe that Plaintiff was asserting an ADA claim. Instead, Plaintiff sought a single day of paid leave for a headache and muscle tension. Additionally, Plaintiff failed to check the "disability" box on her EEOC charge, and that alone dooms her claim. *See, e.g. Davis v. FBI*, Civil Action No. 23-3103, 2025 U.S. Dist. LEXIS 23581 (D.D.C. February 10, 2025); *Carter v. Washington Post Co.*, Civil Action No. 05-1712, 2006 U.S. Dist. LEXIS 104069 (D.D.C. May 16, 2006).

Plaintiff's citation to *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) does not aid her cause. The *Park* court held that a Title VII litigation that follows an EEOC charge is "limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations'." 71 F.3d at 907. The case did not encompass a situation where, as here, a plaintiff attempted to bring a claim based on a separate statute that was not cited or alleged in her EEOC charging documents. Regardless, even in *Park*, the court concluded that the plaintiff had not adequately exhausted her Title VII hostile work environment claim because she had made no allegations that expressed or hinted at such a claim. *Id.* at 908.

The case is a directly analogous to the case presently before the Court, as Plaintiff's EEOC charge does not even hint that Plaintiff was asserting a claim arising under the ADA.[6]  Moreover, the *Park* court did not, as Plaintiff asserts, "caution[] against unduly rigid interpretation of the exhaustion requirement."  Opp. at 21.  To the contrary, the court said that it "cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."  71 F.3d at 907 (internal citations omitted).

Because Plaintiff did not assert an ADA claim in her EEOC charge, Count V of her Complaint should be dismissed for failure to exhaust her administrative remedies.

## CONCLUSION

For the foregoing reasons, API respectfully requests that the Complaint be dismissed with prejudice.

/s/Michael J. Lorenger
Michael J. Lorenger (D.C. Bar 454146)
Lorenger & Carnell PLC
651 S. Washington St.
Alexandria, Virginia 22314
703-684-1800 (Phone)
703-684-1805 (Fax)
mlorenger@lorengercarnell.com

Counsel for Defendants

---

[6]  Requesting short-term disability leave is <u>not</u> coincident with, and is often contrary to, requesting leave as an accommodation under the ADA.  People take STD for conditions not covered under the ADA, like pregnancy, and improper denials of STD benefits would be remedial as an ERISA claim, not as an ADA violation.

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June, 2025, I filed the foregoing Reply in Support of Defendant's Motion to Dismiss in accompanying Memorandum in Support with the Court's electronic filing system, which resulted in service on all counsel of record.

<u>**/s/Michael J. Lorenger**</u>
Michael J. Lorenger